STATE OF WEST VIRGINIA

FILED
**June 25, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **P.M., M.M., L.G., and D.G.**

**No. 19-1058** (Randolph County 19-JA-83, 19-JA-84, 19-JA-85, and 19-JA-86)

## MEMORANDUM DECISION

Petitioner Mother C.M., by counsel Gregory R. Tingler, appeals the Circuit Court of Randolph County's October 17, 2019, order terminating her parental rights to P.M., M.M., L.G., and D.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Heather M. Weese, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period and in finding that the DHHR made reasonable efforts to preserve and/or reunify the family.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner abused methamphetamine during her pregnancy with P.M., who was born drug exposed. Petitioner admitted to the DHHR worker that she abused methamphetamine weekly, had a long history of substance abuse, and last used methamphetamine two days before P.M.'s birth. Thereafter, petitioner waived her preliminary hearing, and the circuit court ordered her to randomly drug screen through the "Call-To-Test" program and participate in supervised visitations.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

At an adjudicatory hearing held in August of 2019, petitioner stipulated to the allegations as contained in the petition. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. Petitioner moved for a post-adjudicatory improvement period, but the circuit court held the motion in abeyance.

In September of 2019, the circuit court held the final dispositional hearing. Petitioner reiterated her request for an improvement period but did not testify or provide any other evidence in support of her request. The DHHR moved to terminate petitioner's parental rights, arguing that she had been noncompliant with drug screening throughout the proceedings. Testimony showed that petitioner failed to consistently call in to ascertain whether she needed to submit to a drug screen, missed many drug screens, and tested positive for substances several times in August of 2019. The DHHR further argued that in addition to supervised visitations and drug screening services in the case at bar, it also provided a plethora of services to petitioner in prior Child Protection Services ("CPS") interventions and proceedings.[2] Specifically, the DHHR worker testified that petitioner received twenty months of parenting sessions, seventy-nine months of transportation services, twenty-two months of safety and in-home services, and twenty-two months of adult life skills sessions.[3] Despite receiving such extensive services, the DHHR argued that petitioner failed to improve her parenting ability and that there were no additional services it could offer her to remedy the conditions of abuse and neglect. Upon hearing the evidence presented, the circuit court denied petitioner's motion finding that she was unlikely to participate in an improvement period, as evidenced by her lack of compliance with drug screening. The circuit court noted that petitioner failed to testify "or otherwise present proof that she's likely to fully participate in the terms and conditions of the improvement period, were it to be granted" and that she failed to otherwise assist her attorney in "the defense of her case." The circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. The circuit court entered an order reflecting its decision on October 17, 2019. Petitioner appeals this dispositional order.[4]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

---

[2]The record indicates that petitioner received such services as a "non-party respondent."

[3]According to the guardian, upon the DHHR's disclosure of discovery materials in August of 2019, "records were disclosed of the services offered to [petitioner] since 2007."

[4]All parents' parental rights have been terminated, with the exception of M.M.'s unknown father. The DHHR indicates that it is seeking the termination of the unknown father's parental rights. The children's permanency plan is adoption by the current foster family.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her a post-adjudicatory improvement period when she had not previously been granted an improvement period and "when the allegations from a previous case . . . were relied upon as a basis for the DHHR's failure to offer any services to [her]." According to petitioner, the circuit court "imposed an improper burden of proof upon [her] as she was not absolutely required to testify in order to sustain her burden" and the evidence presented below "satisfied that burden without [her] testimony." We disagree.[5]

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

---

[5]Regarding petitioner's contention that the circuit court improperly relied upon information concerning the DHHR's provision of services to petitioner in prior CPS interventions and child abuse and neglect proceedings, petitioner fails to cite to the record in support of this argument. In fact, a review of the record reveals that the circuit court relied upon petitioner's complete failure to satisfy her burden to demonstrate that she was likely to fully participate in an improvement period and upon the DHHR's evidence presented below. The circuit court does not suggest that it denied petitioner's request for an improvement period based upon her previous receipt of services from the DHHR in prior matters. Confusingly, in the body of petitioner's brief, she complains that her "history" of regaining custody of the children should have been relied upon by the circuit court when determining whether to grant her an improvement period. Petitioner's arguments are not only unclear but are also unsupported. As such, we find this argument without merit.

Petitioner concedes that she "bears the burden of proof in providing clear and convincing evidence that she is likely to fully participate in an improvement period." Yet, petitioner ignores the fact that she completely failed to satisfy this burden when she presented no evidence in support of her request for an improvement period. Of course, petitioner was not "absolutely required" to testify, but she was required to put forth some evidence in support of her request of an improvement period. Petitioner was free to carry her burden by presenting evidence other than her own testimony but failed to do so. Because she put forth no evidence whatsoever, the DHHR's evidence of her noncompliance with drug screening remained unrebutted, and the circuit court was left only with evidence showing that she was unlikely to fully participate in an improvement period. As such, the circuit court had no choice but to rely on the evidence presented, which was adverse to petitioner's request for an improvement period. Indeed, on appeal, petitioner concedes that she had "positive tests and [drug] screening compliance lapses." In light of petitioner's failure to present any evidence demonstrating that she was likely to comply with the terms and conditions of an improvement period, we find no error in the circuit court's denial of said request.

Petitioner next argues that the circuit court erred in finding that the DHHR made reasonable efforts to preserve and/or reunify the family because she was not provided drug treatment. Petitioner also contends that the circuit court failed to analyze the "factors set forth in [West Virginia Code] § 49-4-604(b)(6)(A)-(C) (2019)."[6] Petitioner acknowledges that there are

_____

[6]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case. West Virginia Code § 49-4-604(b)(6)(A) through (C) (2019) states, in part, as follows:

Upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental . . . rights and responsibilities of the abusing parent. . . If the court shall so find, then in fixing its dispositional order the court shall consider the following factors:

(A) The child's need for continuity of care and caretakers;

(B) The amount of time required for the child to be integrated into a stable and permanent home environment; and

(C) Other factors as the court considers necessary and proper. Notwithstanding any other provision of this article, the court shall give consideration to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights . . . . In determining whether or not parental rights should be terminated, the court shall consider the efforts made by the department to provide remedial and reunification services to the parent. The court order shall state:

(continued . . . )

4

several circumstances in which the DHHR is not required to make reasonable efforts to reunify a family but argues that none of those circumstances exist in this case. *See* W. Va. Code § 49-4-602(d) (2019). Further, if those conditions existed, the circuit court failed to state such a finding as a basis for relieving the DHHR of its duty to provide petitioner with additional remedial services. We disagree.

According to West Virginia Code § 49-4-601(d), "[a]t the time of the institution of any proceeding under this article, the [DHHR] shall provide supportive services in an effort to remedy circumstances detrimental to a child." Petitioner correctly asserts that none of the circumstances set forth in West Virginia Code § 49-4-602(d) existed in this case and that the DHHR was required to provide remedial services. However, contrary to petitioner's arguments, the DHHR, in fact, provided services to petitioner—supervised visitations and random drug screening. Petitioner argues that she should have been entitled to substance abuse treatment, yet she could not comply with the meager requirement to regularly submit to drug screening. As petitioner did not comply with the services offered, she cannot now dictate that reasonable efforts should have included drug treatment. For these reasons, we find petitioner's argument unpersuasive and without merit.

Petitioner's remaining arguments are predicated upon the circuit court's alleged failure to analyze the factors set forth in West Virginia Code §§ 49-4-604(b)(6) and (7) (2019), which require the circuit court to consider the efforts made by the DHHR to provide remedial and reunification services to the parent or whether such services or reasonable efforts were required or unreasonable due to specific circumstances. However, the circuit court's order addressed several of the required factors. Specifically, the circuit court found that the children "need continuity in caretakers, and a significant amount of time is required to be integrated into a stable and permanent home environment." Further, the circuit court found that petitioner failed to participate in the DHHR's services, specifically the "Call-To-Test" program for random drug screening. Finally, the circuit court found that petitioner did not appear to have an interest in

---

(i) That continuation in the home is not in the best interest of the child and why;

(ii) Why reunification is not in the best interests of the child;

(iii) Whether or not the department made reasonable efforts, with the child's health and safety being the paramount concern, to preserve the family, or some portion thereof, and to prevent the placement or to eliminate the need for removing the child from the child's home and to make it possible for the child to safely return home, or that the emergency situation made those efforts unreasonable or impossible; and

(iv) Whether or not the department made reasonable efforts to preserve and reunify the family, or some portion thereof, including a description of what efforts were made or that those efforts were unreasonable due to specific circumstances.

5

fully participating in the proceedings and had "historically received many months of services from the [DHHR] without sustained change."

While we acknowledge that West Virginia Code §§ 49-4-604(b)(6) and (7) (2019), require additional findings regarding the DHHR's reasonable efforts to reunify the family, we find that the circuit court's failure to explicitly set forth these findings in the order on appeal does not require vacation. We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). The record shows that petitioner received extensive services from the DHHR as far back as 2007, including twenty months of parenting sessions, seventy-nine months of transportation services, twenty-two months of safety and in-home services, and twenty-two months of adult life skills sessions. Despite receiving these services, petitioner made no improvement in her parenting, which supports the circuit court's finding that she "historically received many months of services from the [DHHR] without sustained change." Further, on appeal, petitioner admits that she failed to comply with the DHHR's services during the underlying proceedings and received extensive services in prior matters. As such, we cannot find that vacation of this order is warranted, given that this does not constitute a substantial disregard or frustration of the rules and statutes governing abuse and neglect proceedings.

We further find that the record also supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) (2019) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c) (2019), "[n]o reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" means that "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." As discussed above, petitioner received extensive services from the DHHR, both in prior cases and in the case at bar, without sustained improvement. The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse and/or neglect on her own or with help. Because petitioner failed to remedy the conditions of abuse and neglect, the children's welfare would necessarily be threatened in her care. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, we recognize that proceedings against M.M.'s unknown father in the circuit court are still ongoing. As such, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6) (2019)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 17, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

7